ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2022-Sep-20 14:39:38
60CV-22-6502
C06D04 : 13 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
_____ DIVISION, CIVIL DIVISION

BARBARA RASULALLAH                                                PLAINTIFF

V.                          NO.:

SMITH & NEPHEW, INC.
AND JOHN DOES (1-10)                                              DEFENDANTS

## COMPLAINT

Comes now the Plaintiff, by and through undersigned counsel, and for her complaint for damages, states:

### JURISDICTION AND VENUE

1.  This is an action in tort. Relief is sought for damages caused by a defective product based in strict liability and common law negligence.

### PARTIES

2.  Plaintiff is a person of the full age of majority and a resident of Little Rock, Pulaski County, Arkansas which is in the Eastern District, Central Division of Arkansas.

3.  The Defendant Smith & Nephew, Inc. ("Smith & Nephew") is a foreign for-profit corporation, incorporated in founded in Delaware and incorporated in Tennessee. Upon information and belief, the registered agent for service of process is C T Corporation System. The Agent Address is 300 Montvue Road, Knoxville, TN 37919-5546. Smith & Nephew is a public limited company incorporated and headquartered in the UK and doing business in many countries around the world. John Does 1 - 10 are Defendants

1

involved in the creation, manufacture, design and development of the Smith & Nephew Genesis II.

**FACTUAL ALLEGATIONS**

4. On December 7, 2016, Plaintiff underwent a right total knee arthroplasty. A knee arthroplasty is also known as a total knee replacement. It is a surgical procedure to resurface a knee damaged by arthritis. Metal and plastic parts are used to cap the ends of the bones that form the knee joint, along with the kneecap. The three components of a knee implant include: 1. Femoral component. This metal piece attaches to the end of the femur. It has a groove that allows the patellar component to slide up and down smoothly as the knee bends and straightens; 2. Tibial component. This flat, two-piece metal and polyethylene (plastic) part is attached to the tibia. The metal part sits on top of the tibia and has a stem that is inserted into the tibia for stability. The plastic part, or tibial spacer, acts as a cushion between the metal tibial component and the metal femoral component; and 3. Patellar component. This plastic piece is dome-shaped to match the resurfaced shape of the patella. Because the patella rests against the femur, the alignment of the patellar component and femoral component is crucial for proper function. The patella is held in place by the quadriceps tendon and patellar tendon. These three components are usually cemented in place, but some doctors use a cementless technique that helps the bone grow into the

implant to help increase stability. A cementless technique may be used on patients who are young, healthy and have strong bone structure around the knee. Because bone cement can break away and cause an implant to loosen, cementless knee replacements are less likely to loosen over time. For this reason, cemented knee replacements are considered better suited for older, less active patients.

5. Prior to her knee replacement, Plaintiff, under the care of Dr. Bernard Cromwell, M.D., underwent non-operative treatment. However, the procedures were not successful. Plaintiff had undergone a lumbar fusion in the Spring of 2016. She was having bilateral knee pain with the right being worse than the left. X-rays revealed severe tri-compartmental osteoarthritis. After careful consultation, Plaintiff decided to undergo operative intervention.

6. Prior to undergoing the procedure, Plaintiff had a MRI on October 31, 2016. The MRI Report contains the following notation: *Technique: Smith & Nephew protocol. Sagittal proton density weighted, axial fat-suppressed proton density and coronal T1-weighted images.*

7. On December 7, 2016, Dr. Cromwell implanted a Smith & Nephew Genesis II. The operative notes indicate the following about the components used:

*Smith Nephew Visionaire system using.*

3

*1. Size 5 right posterior stabilized legion nonporous femoral component.*

*2. Size 5 GENESIS II right nonporous tibial baseplate.*

*3. 29 mm x 7. 5 mm GENESIS II resurfacing patellar component.*

*4. Size 5 , 6 , 9 mm GENESIS II PS high-flexion articular insert.*

8.   Dr. Cromwell notes indicate that after Plaintiff underwent her total knee arthroplasty, she was placed on a PCA pump that was discontinued postop day #1.   The hospital notes indicate:   *Placed on oral medication consists of oxycodone 40 mg 1 p. o. q. 6 hours. She was taken a maintenance dose of 30 mg p . o . q . 6 ours anticoagulated with Coumadin. On post operative day #2, the drain was discontinued. She was seen with physical therapy and on postoperative day 1, up and ambulating using a rolling walker. Dressings were changed. The incision site was covered with a PICO special vacuum seal, which is to be removed by the patient approximately 3-4 more days from now. She has had anticoagulation at night. She will have PT/INRs drawn by home health on Mondays and Thursdays. 1 She will have home physical therapy 3 days a week. She will follow up in 2 weeks for re evaluation.*

9.   After the procedure, Plaintiff began to have problems. On May 15, 2017, Plaintiff underwent a manipulation under anesthesia of the right knee.   She was diagnosis with arthrofibrosis of total knee arthroplasty.   She had lost 5 to 10

4

degrees of flexion.

10. On March 1, 2018, underwent a triple phase bone scan of both knees. The reason for the exam was because she was having pain in the right knee. The findings from the triple phase bone scan were consistent with infection of the right total knee arthroplasty.

11. On May 11, 2018, Plaintiff was admitted to St. Vincent for a revision of the right total knee arthroplasty. The admitting diagnosis was history of metal allergy, right knee; loosening of the prosthesis; chronic knee pain and fibrosis. Approximately 1 year out from the right total knee arthroplasty, Plaintiff was complaining of continuous pain and swelling and studies revealed a metal allergy.

12. Plaintiff's discharge diagnosis after the revision procedure was athrofibrosis of total knee arthroplasty; Hx (history) of metal allergy; Loose total knee arthroplasty; Pain due to total right knee replacement.

13. Dr. Cromwell notes indicated:  Components used:

*1. A Smith and Nephew Legion Oxinium constrained femoral component, size 5, right side.*

*2. Size 5 right Legion revision tibial base plate.*

*3.   Straight 15 mm x 160 mm Legion press-fit stem.*

*4.   Straight mm x 160 mm Legion press-fit stem.*

*5. Size 5 to 6, 11 mm Genesis II PS high-flexion articular insert.*

14. Upon information and belief, the Defendants Smith & Nephew and/or John Does 1 - 10 designed, manufactured and marketed the GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular insert used in Plaintiff's surgical procedure in Little Rock, Arkansas.

15. The Defendant is a non-domiciliaries of the State of Arkansas and contracts business within the State of Arkansas. The Defendant have committed tortious acts within the State of Arkansas, causing injury to a person within the State of Arkansas, and said Defendant expects or should reasonably expect to have consequences in the State of Arkansas; the Defendants solicit business and engages in persistent courses of conduct and derives substantial revenue from goods used and services rendered in the State of Arkansas. The Defendants are in the business of researching, designing, developing, testing, manufacturing, distributing, licensing, labeling, and marketing, either directly or indirectly through third-party related entities, GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular in the State of Arkansas.

16. The Defendants market and sell the GENESIS II right

6

nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular to be used on patients who are in need of a knee replacement.

17. Prior to May 11, 2018, the Defendants manufactured, introduced, and/or delivered for introduction into interstate commerce, the GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular.

18. The GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular is intended to provide orthopedic surgeons seeking treatment solutions beyond traditional knee replacements with the ability to empower patients with a renewed right to an active lifestyle.

19. Upon information and belief, the Defendants knew or should have known that design and/or manufacturing defects in its the GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular made it susceptible to failure, causing pain and discomfort in patients and requiring revision surgeries.

20. Despite Defendants' knowledge of the catastrophic injuries, conditions, and complications caused the GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular in

violation of Federal and State requirements, it continued to manufacture, market, provide inadequate instructions for use, and sell the GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular and also failed to adequately warn, label, instruct, and disseminate information with regard to Defendant's the GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular both prior to and after the marketing and sale of the System.

21. The GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular were used during Plaintiff's Knee Replacement Procedure, performed at St. Vincent's Infirmary. Plaintiff was subsequently discharged from the hospital. Plaintiff subsequently suffered pain and tenderness to the touch that required that the knee be replaced.

### COUNT I: STRICT LIABILITY

22. The Defendants owed a duty of reasonable care to the general public, including Plaintiff, when it designed, labeled, manufactured, assembled, inspected, tested, marketed, placed into the stream of commerce, instructed, and sold the GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar

component and the GENESIS II PS high-flexion articular to assure that the products were in compliance with FDA regulations and not defective and/or unreasonably dangerous for its intended purposes and foreseeable uses.

23. The Defendants breached this duty by designing, labeling, manufacturing, assembling, inspecting, testing, marketing, distributing, instructing, and selling the GENESIS II right nonporous tibial baseplate, the GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular in a defective and unreasonably unsafe condition including, but not limited to, its propensity for the colonization of organisms, including Mycobacteria.

24. The Defendants sale of the product in a defective condition or unreasonably dangerous condition, along with Defendants' violations of federal regulations as outlined herein, establish a prima facie case of strict liability in tort.

25. The femoral component and articular insert has precise alignment criteria for proper loading and articulating range. Sizing and alignment guides are used in conjunction used to aid surgeons in correct sizing of components, guide instruments that cut away bone, drill holes, as well as fit components. The correct placement and fit of the implanted devices are critical for wear performance. Within the first six months of having the implant Barbra already began to show complications with the implant system

9

when she had to return and have it readjusted as she had a total loss of 20 degrees in her range of motion. Less than a year after receiving this corrective surgery she had to yet again admit herself to the hospital for extreme pain and swelling in her knee. This rendered her nearly immobile as she was unable to was unable to articulate her knee, nor bear weight on the device. It was determined that loosening of total knee arthroplasty and she had prosthetic infection, as well arthofibrosis of total knee arthroplasty.

26. The GENESIS II right nonporous tibial baseplate, GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular have caused catastrophic injury to Plaintiff requiring revision surgery to correct the defect.

### COUNT II: NEGLIGENCE

27. The Defendants owed Plaintiff a duty of care to insure that the GENESIS II right nonporous tibial baseplate, GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular were safe for use.

28. The Defendants breached its duty of care that it owed to Plaintiff by including, but not limited to, failing to properly warn consumers of the defects in its products, failure to use proper care to insure the integrity of the materials used to manufacture its products, failing to use the standard of care that a reasonable company would use it the marketing, distribution,

10

manufacturing, safe and serving of the GENESIS II right nonporous tibial baseplate, GENESIS II resurfacing patellar component and the GENESIS II PS high-flexion articular.

29. The Defendants' negligence was the proximate cause of the pain, swelling, loosing and inflammation that led to her having to have subsequent treatment ultimately resulting in a revision surgery.

30. The Defendants' negligence proximately caused Plaintiff's damages.

### DAMAGES

31. As a direct and proximate result of Defendants' violations, Plaintiff suffered severe debilitating injuries, economic loss, and other damages, including, but not limited to, cost of medical care, rehabilitation, lost income, and pain and suffering.

32. Plaintiff is entitled to damages for medical expenses, lost wages, pain and suffering, mental anguish and loss of consortium.

33. Plaintiff demands a jury trial.

Wherefore, Plaintiff prays that this Complaint be deemed good and sufficient that the Defendants be duly cited to appear and to answer this complaint and that after due proceedings are had herein that she be granted a judgment in her favor and against the

defendants for medical expenses, pain and suffering, mental anguish, permanent impairment, loss of income, attorney's fees and all other relief to which she is entitled.

                              Respectfully submitted,

                              <u>/s/ Willard Proctor, Jr.</u>
                              Willard Proctor, Jr.
                              2500 South State Street
                              Little Rock, AR   72202
                              (501) 378-7720
                              Arkansas Bar No.:   87136
                              willard@wpjrlaw.com

**AFFIDAVIT**

Comes now the undersigned and solemnly swears that the following facts and information are true and correct to the best of my knowledge and belief:

1. I am the attorney for the plaintiff in the attached pleading.

2. Neither me nor my client knows the identities of the John and Jane Doe designations set forth in the pleading nor the insurance carriers for any entity or individual not susceptible to a direct cause of action.

3. Upon determining the identity of the unknown parties responsible for the injuries and damages sustained by plaintiff, or for paying those damages, I will timely amend the Complaint to specifically designate the names of the unknown parties.

4. This Affidavit is filed in accordance with Ark. Code Ann. § 16-56-125.

_Willard Proctor Jr._
Willard Proctor, Jr.

SWORN TO AND SUBSCRIBED TO before me, a Notary Public, on this

__11 / 7 / 2031__  _Kyesha Raulston_
My Commission Expires      Notary Public

```
KYESHA RAULSTON
Notary Public-Arkansas
Pulaski County
My Commission Expires 11-07-2031
Commission # 12384954
```

1